O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SALVADOR FLORES, an individual, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 18-cv-03792 DDP (JCx) **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** [Dkt. 56] |
| Plaintiff, | | |
| v. | | |
| CITY OF PASADENA, a municipal entity, CITY MANAGER STEVEN MERMELL, PASADENA POLICE DEPARTMENT, CHIEF OF POLICE PHILLIP A. SANCHEZ (former); CORPORAL SUSAN GOMEZ, OFFICER THOMAS BUTLER, OFFICER RAPHAEL SANTIAGO, OFFICER DEAN BISTERFELDT, OFFICER MATTHEW GRIFFIN, and Does 1 through 100, inclusive | | |

Presently before the court is Defendants' Motion for Summary Judgment. (Dkt. 56.) Having considered the submissions of the parties and heard oral argument, the

court grants in part and denies in part Defendants' motion and adopts the following order.

**I. BACKGROUND**

On the evening of January 20, 2017, at approximately 9:15 p.m., Salvador Flores ("Plaintiff"), Plaintiff's girlfriend, Marissa Beltran ("Beltran"), and several friends, including Giovani Rodriguez, Cruz, Jose Jimenez ("Jose"), and Jose's wife, arrived at a night club in Los Angeles. (Dkt. 56-1, Lee Decl., Ex. B, Flores Dep. at 57:24-25, 58:22, 59:23-25, 64:9-10.) At approximately 10:30 p.m., Plaintiff consumed one 12 oz. Corona beer. (*Id.* at 67:7-12; Dkt. 59-7, Flores Decl. ¶ 2.) Plaintiff and his friends left the night club between 1:30 a.m. and 2:00 a.m. on January 21, 2017. (Lee Decl., Ex. B, Flores Dep. at 70:16-23.) Plaintiff and his friends then went to a fast food restaurant where Plaintiff's girlfriend, Beltran, received a phone call from her best friend "Samantha." (*Id.* at 72:2-18, 73:1-8; Flores Decl. ¶ 4-5.) Samantha and Beltran then began to argue, in part, because Samantha was upset that Beltran "[hung] out with," Samantha's ex-boyfriend Jose, and because she was jealous of Plaintiff. (Lee Decl., Ex. B, Flores Dep. at 72-73; Flores Decl. ¶ 6.)

After the phone call, Plaintiff, accompanied by Beltran, Rodriguez, and Cruz, drove to meet Samantha in a residential area in Pasadena. (Lee Decl., Ex. B, Flores Dep. at 80:14-17, 21-25, 81:13-22.) According to Plaintiff, he and Beltran went to talk to Samantha because in the past when Samantha and Beltran argued, Plaintiff and Beltran would drive to meet Samantha to "talk with her so they could be friends again." (*Id.* at 73:4-6.) Plaintiff and Beltran exited Plaintiff's car and were standing on the public street when Samantha and several others, including Samantha's boyfriend "Joel," approached Plaintiff and Beltran. (*Id.* at 82:23-83:24.) A verbal altercation ensued, the details of which are not clear. It is undisputed that during this altercation, Joel told Plaintiff that he wanted to fight Plaintiff, and Plaintiff told Joel that Samantha was not actually his girlfriend, she was a "ho," and that "getting into a fight was not worth it." (*Id.* 85:23-25,

2

86:1-3; Flores Decl. ¶ 13.) At some point after Plaintiff's statement, it is not clear much time passed after this statement nor whether any other words were exchanged amongst the parties, Plaintiff and his girlfriend walked away and got back into Plaintiff's car to leave the area. (Lee Decl., Ex. B, Flores Dep. at 86:5-20; Flores Decl. ¶ 14.) Plaintiff was seated in his vehicle with the door closed and seatbelt fastened, when Joel ran to the vehicle, and began striking Plaintiff in the face and body, including hip, waist, arms, and hands. (Dkt. 59-1, Ouchi Decl., Ex. A, Flores Dep. at 68:4-14, 109:10-19; Flores Decl. ¶ 15.) Plaintiff did not fight back and was instead able to call 911 while Joel was striking him. (*Id.* at 68:19-24.) Pasadena Police Officers Dean Bisterfeldt, Matthew Griffin, Raphael Santiago ("Officer Santiago"), Thomas Butler ("Officer Butler"), and Corporal Susan Gomez ("Officer Gomez") responded to the scene. (Ouchi Decl., Ex. I, Gomez Dep. at 61:13-17.) The responding officers were equipped with Body Worn Cameras ("BWC") and were activated. (Dkt. 56-2, Butler Decl. ¶ 10; Dkt. 56-5, Griffin Decl. ¶ 5; Dkt. 56-4, Santiago Decl. ¶ 5; Dkt. 56-3, Gomez Decl. ¶ 6; Dkt. 56-10, Bisterfeldt Decl. ¶ 5.)

Plaintiff was in the driver's seat of his vehicle when Officer Santiago arrived. (Dkt. 56-4, Santiago Decl., Ex. D ("Santiago BWC") at 0:00-0:10.) Officer Santiago was the first Officer to approach Plaintiff and interview him. (*Id.* at 0:00-1:45.) Santiago's BWC shows Plaintiff exiting his car with what appears to be blood around his mouth. (*Id.* at 0:11-0:16.) Santiago's BWC also shows Officer Butler located on the passenger side of Plaintiff's vehicle when Plaintiff exited his car and when Plaintiff first began to speak to Officer Santiago. (*Id.* at 0:05-0:33.) About a minute into Officer Santiago's interview of Plaintiff, Officer Santiago asked: "Do you want to take an ambulance to the hospital, or do you want to drive?" (*Id.* at 0:58-1:03.) Plaintiff responded, "[n]o, I think I can drive." (*Id.*) While Officer Santiago interviewed Plaintiff, Officer Butler approached and asked: "[I]s this some family drama dude?" (*Id.* at 1:48.) Plaintiff told the officers that his girlfriend's best friend, Samantha, was at the residence drinking, was drunk, and that he and his girlfriend came to talk to her. (*Id.* at 01:30-2:12.) Plaintiff also told the officers

3

that during the verbal altercation, he called Samantha a "ho." (*Id.* at 4:00-4:08.) Officer Gomez then also approached Plaintiff and, amongst other questions and statements, told Plaintiff that he was "wasting police resources." (*Id.* at 5:05.) The videos do not capture the remaining relevant events that occurred that night, however, it is undisputed that Plaintiff was arrested for public intoxication in violation of Cal. Penal Code 647(f). (Dkt. 56-2, Ex. H ("Police Report".)) No tests were conducted to determine the sobriety of Plaintiff.

The events that follow are disputed. Plaintiff presents evidence that when he was handcuffed and placed in the police cruiser, he notified the officers of his injuries and requested medical attention, but the officers ignored these requests. (Flores Decl. ¶¶ 35-36.) When Plaintiff arrived at the jail, he requested medical attention but the officers again ignored these requests. (*Id.* ¶ 40.) After he was booked, Plaintiff collapsed to the floor, began to cry, and complained that his heart hurt. (*Id.* ¶¶ 43-45.) Plaintiff has a history of heart complications. (Flores Decl. ¶ 43.) Plaintiff claims that the officers did not respond and instead laughed at him, called him a "crybaby," and told Plaintiff that if he wanted medical attention, they would put him back in jail afterwards. (*Id.* ¶¶ 43-46.) Another officer, not involved in this litigation, called paramedics after seeing Plaintiff on the floor. (Dkt. 56-6, Anaya Decl. ¶¶ 4-5; Flores Decl. ¶ 44.) Paramedics arrived, and upon evaluating Plaintiff, the paramedics determined that Plaintiff's heartrate was abnormal, but Plaintiff declined to be transported to the hospital. (Dkt. 56-8, Golden Decl., Ex. O; Flores Decl. ¶ 47.) Plaintiff declares that he declined medical attention "because of what that Officer had said to [him]." (*Id.* ¶ 48.) Thereafter, another officer told Defendants to transport Plaintiff to the hospital. (*Id.* ¶ 49.)

For their part, Defendants put forth evidence that when Plaintiff arrived at the Pasadena Police Station, he was examined by a vital nurse who cleared Plaintiff for booking. (Butler Decl. ¶¶ 22-24; Dkt. 56-9, Gardoce Decl. ¶¶ 3-4.) Defendants also assert that paramedics were summoned in response to Plaintiff's complaints of heart pain.

4

(Butler Decl. ¶ 26.) Paramedics arrived, evaluated Plaintiff, and upon evaluation, Plaintiff declined to be transported to the hospital. (Dkt. 56-8, Golden Decl. ¶¶ 5-6; Anaya Decl. ¶¶ 4-5.) Nonetheless, Officer Butler transported Plaintiff to the hospital. (Butler Decl. ¶ 28.) Officer Butler then then issued Plaintiff a citation and released Plaintiff at the hospital. (*Id.* ¶ 29.) Approximately four hours later, Officer Butler prepared a police report. (*Id.* ¶ 30.) The police report did not disclose that the officers' BWCs were activated. (Ouchi Decl., Ex. J.)

On February 27, 2017, the Pasadena City Prosecutor's office filed a criminal complaint against Plaintiff for violating Penal Code Section 647(f). (Ouchi Decl., Ex. L, at 1.) On July 6, 2017, after various continuances for discovery compliance, the Pasadena Prosecutor's Office sent a link to Plaintiff's attorney, containing some, not all, of the BWC videos. (Ouchi Decl., Ex. L; Espinoza Decl. ¶¶ 3-5.) On July 18, 2017, the City Prosecutor's office dismissed the case. (Ouchi Decl., Ex. L.)

Based on the events described above, Plaintiff brings this action against the City of Pasadena, City Manager Steven Mermell, Pasadena Police Department, Chief of Police Phillip A. Sanchez, Corporal Susan Gomez, Officer Thomas Butler, Officer Raphael Santiago, Officer Dean Bisterfeldt, and Officer Matthew Griffin ("Defendants"). (*See* Dkt. 50, Third Amended Complaint.) The Third Amended Complaint raises the following causes of action: (1) False Arrest and Detention (42 U.S.C. § 1983); (2) Deliberate Fabrication of Evidence (42 U.S.C. § 1983); (3) Concealment of Exculpatory Evidence (42 U.S.C. § 1983); (4) Failure to Summon Prompt Medical Care (42 U.S.C. § 1983); (5) Conspiracy to Violate Civil Rights; (6) Malicious Prosecution; (7) Abuse of the Legal Process; (8) Battery; and (9) Intentional Infliction of Emotional Distress.

Defendants now move for summary judgment on all claims. (Dkt. 56, Motion for Summary Judgment ("MSJ").)

///

///

## II. LEGAL STANDARD

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. *Carmen v. San Francisco Sch. Dist.*, 237 F.3d 1026, 1031 (9th

6

Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." *Id.*

**III. DISCUSSION**

As a preliminary matter, the parties have agreed to dismiss defendants City Manager Steven Mermell, Pasadena Police Department, Chief of Police Phillip A. Sanchez, Officer Dean Bisterfeldt, and Officer Matthew Griffen. (MSJ at 25:13-15; Dkt. 59, Opposition ("Opp.") at 25.) Therefore, the court dismisses the above-named defendants without prejudice. The remaining Defendants first argue for summary judgment on Plaintiff's claims under Section 1983: false arrest, deliberate fabrication of evidence, concealment of exculpatory evidence, and failure to summon prompt medical care.

Section 1983 provides, in pertinent part, "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. "[A] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, 'if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

Individual police officers can only be held liable under Section 1983 upon a showing of personal participation in the alleged wrongdoing; "there is no respondeat superior liability under section 1983." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Personal participation can be demonstrated by showing an officer's "integral participation" via "some fundamental involvement in the conduct that allegedly caused the violation," *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007), or by

7

showing that the individual failed to intervene when the individual "had a constitutional duty to intervene" to prevent the alleged injury. *Ting v. United States*, 927 F.2d 1504, 1511 (9th Cir. 1991). "Integral participation" does not require that the actions of each individual officer "rise to the level of a constitutional violation," however, it requires that an officer be more than a mere bystander, there must be some fundamental involvement. *Boyd v. Benton Cty.*, 374 F.3d 773, 780 (9th Cir. 2004). Supervisors can also be liable under Section 1983. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). Although there is no respondeat superior liability, a supervisor may be held liable "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.*

### A. Section 1983: False Arrest and Detention

Defendants argue that based on the totality of the circumstances, Officer Butler had probable cause to arrest Plaintiff for violation of California Penal Code 647(f) ("public intoxication"). (MSJ at 10-11.) Defendants also argue that, although Officer Butler's report and his declaration state that he arrested Plaintiff for public intoxication, the objective facts show that probable cause also existed for violation of California Penal Code § 415(3) ("disturbing the peace") based on Plaintiff's admission that he called Samantha a "ho," in Joel's presence, and on a public street. (*Id.* at 12:24-28.) Defendants Officer Santiago and Officer Gomez also argue that they "did not participate in [Plaintiff's] arrest" and should be dismissed. (*Id.* at 13:6-17.)

Plaintiff contends that the evidence, namely, the officers' BWCs, shows that no probable cause existed for the arrest because Plaintiff did not "display a single objective symptom of alcohol intoxication as Officers describe," and further contends that Defendants could not arrest Plaintiff for disturbing the peace because the insulting word, "ho," was not made in the officers' presence as required by California Penal Code § 836(a)(1). (Opp. at 10:23-25, 11.) Plaintiff also argues that Officer Gomez and Officer

8

Santiago participated in the arrest, as evidenced by the videos and the officers' own declarations admitting participation in the arrest, and therefore, can be held individually liable. (*Id.* at 13.)

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015) (quotations omitted). Probable cause exists when, based on the totality of the circumstances known to officers at the time, there is a "fair probability or substantial chance of criminal activity." *Id.* at 1018. "The determination whether there was probable cause is based upon the information the officer had at the time of making the arrest." *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008). Also relevant to this case, to determine whether a claim is cognizable under the Fourth Amendment, the proper inquiry is whether probable cause existed for the arrest, irrespective of whether a state statute requires an officer to be present. *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990). "[T]he requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment." *Id.*

        *i.*     *Probable Cause for Public Intoxication*

Penal Code § 647(f) makes it a misdemeanor for an individual to be (1) under the influence; (2) in a public place; (3) and unable to exercise care for his safety or the safety of others. Cal. Penal Code § 647(f). Defendants put forth evidence to demonstrate that Officer Butler, who is trained to investigate individuals who are under the influence, "observed Plaintiff walking in a rocking motion, swaying from one side to another," and "observed Plaintiff briefly leaning his back on the side of his red car." (MSJ at 11 (citing Santiago's BWC 0:12-0:24; Butler Decl. ¶¶ 4-8)).) Defendants also offer evidence that Officer Butler "noticed that Plaintiff was slurring his words," and observed Plaintiff's "watery eyes and smelled an odor of an alcoholic beverage emitting from his breath." (Santiago's BWC 1:45-2:00; 3:00-3:12; Butler Decl. ¶¶ 10, 11, 12, 15.) However, Plaintiff

9

has identified evidence, the same videos Defendants rely on, to dispute Defendants' version of the facts.

In the videos, Plaintiff can be seen standing firmly, without swaying, and can be heard speaking with a speech impediment, not slurring. (*See* Santiago BWC; Dkt. 56-2, Butler Decl., Ex. E ("Butler BWC").) Defendants would have the court observe only the first few seconds after Plaintiff exits his car. (Reply at 4:3-4 ("The pertinent portion Officer Butler's investigation is Plaintiff's movements when he first exited his car.")) Defendants contend that these few seconds clearly show Plaintiff swaying and leaning against his car. However, the proper test is whether under the *totality of the circumstances*, probable cause existed. *See Velazquez*, 793 F.3d at 1018 (emphasis added). The complete video footage, in which Officer Butler can be seen observing Plaintiff and interviewing Plaintiff, must be considered. As noted above, in the videos covering approximately eight minutes, Plaintiff can be seen standing firmly, his feet do not move when talking to Defendants, and it is evident that Plaintiff has a speech impediment. (*See* Santiago BWC; Butler BWC). Plaintiff can be heard telling Defendants, "I talk[] like this," apparently in an attempt to inform Defendants of his speech impediment. (Butler BWC at 1:54-1:58.) A reasonable juror could also conclude that the movement seen is not evidence of Plaintiff swaying but is rather movement of the camera as Officer Santiago was moving. (Santiago BWC at 0:10-0:49.) Moreover, it is not clear whether Officer Butler, who was on the passenger side of the vehicle, not near Plaintiff, could have observed whether Plaintiff briefly leaned on the vehicle. (Santiago BWC at 0:10-0:28.) Viewing the evidence in the light most favorable to Plaintiff, as is required on summary judgment, there are triable issues of fact to determine whether the facts on which Defendants rely for probable cause existed. If these facts did not exist, a reasonable juror may conclude that no probable cause existed. The court concludes that the videos create triable issues of fact. A reasonable juror could find that Plaintiff was not swaying, did not have watery

10

eyes, and was not slurring—facts that are necessary to determine whether probable cause existed for Plaintiff's arrest for public intoxication.

The videos also give rise to genuine doubts about the officers' credibility. A reasonable juror could conclude that Plaintiff did not have "difficulty maintaining his balance while standing and walking," and did not "change[] his answer several times often stating he had not been drinking and eventually stating that he had been drinking at a bar," as Defendants' police report asserts. These potentially false assertions, taken together with Officer Butler's and Officer Gomez's statements in the videos, such as statements that self-help is "reasonable," Plaintiff is "wasting police resources," and Officer Butler telling Officer Gomez that, "if you play stupid games, you win stupid prizes," are sufficient to give rise to genuine doubts about the officers' credibility. (Butler BWC at 3:53-3:56, 4:12-4:26, 4:53-5:10, 5:19-5:22, 5:37-6:00.) "[A] court ruling on a motion for summary judgment may not engage in 'credibility determinations' or 'the weighing of evidence,' as those are functions reserved for the jury." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (quoting *Anderson*, 477 U.S. at 255). Therefore, a trier of fact, viewing the evidence in the light most favorable to the nonmoving party, could find in Plaintiff's favor.

Similarly, based on Santiago's BWC and declaration, a reasonable juror could conclude that Officer Santiago was more than a mere bystander and was instead fundamentally involved in Plaintiff's arrest. The videos show that Officer Santiago was present, engaged in, and a full participant in questioning Plaintiff. (*See* Santiago BWC; Butler BWC; Dkt. 56-3, Gomez Decl., Ex. I ("Gomez BWC").) Officer Santiago also testified that he was Officer Butler's partner, Officer Butler and Officer Santiago were "in charge" of placing handcuffs on Plaintiff, and Officer Santiago could not remember if he or Officer Butler placed the handcuffs on Plaintiff. (Santiago Dep. at 30:17-19, 62:15-19.) "Integral participation" does not require that the actions of each individual officer "rise to the level of a constitutional violation," however, it requires that an officer be more than

11

a mere bystander, there must be some fundamental involvement. *See Boyd*, 374 F.3d at 780. Therefore, the court denies summary judgment to Officer Santiago.

Officer Gomez can also be seen in the videos questioning Plaintiff and discussing the situation with Officer Butler and other officers on the scene. (*See* Gomez BWC.) Officer Gomez declared: "[I]n relying on Officer Butler's representation regarding the objective symptoms of alcohol intoxication as well as my own observations and perception of [Plaintiff], I approved of the arrest." (Gomez Decl. ¶¶ 10, 11, 13, 15.) Therefore, viewing the evidence in the light most favorable to Plaintiff, a reasonable juror could conclude that Officer Gomez was also an integral participant in Plaintiff's arrest or liable as a supervisor. *See Starr*, 652 F.3d at 1207 (a supervisor may be held liable "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."). Thus, the court denies summary judgment to Officer Gomez.

### ii. *Probable Cause for Disturbing the Peace*

Next, Defendants contend that Officer Butler had probable cause to arrest Plaintiff for disturbing the peace under Penal Code § 415(3). Defendants point to the undisputed evidence that Plaintiff admitted to Officer Butler that Plaintiff called Samantha a "ho," and assert that it is also undisputed that "Joel responded violently to Plaintiff's insult." (MSJ at 12:25-26.) Defendants argue that "officer Butler was informed of the foregoing based on Plaintiff's own admissions during the questioning," and thus, had probable cause to arrest Plaintiff for disturbing the peace. (*Id.* at 12-13.)

Penal Code § 415(3) makes it a misdemeanor for a person to "use[] offensive words in a public place which are inherently likely to provoke an immediate violent reaction." Cal. Pen. Code § 415(3). However,

> the mere use of a vulgar, profane, indecorous, scurrilous, opprobrious epithet cannot alone be grounds for prosecution [. . .] The context in which the words are used must be considered, and there must be a showing that the words were

12

> uttered in a provocative manner, so that there was a clear and
> present danger violence would erupt.

*In re Alejandro G.*, 37 Cal. App. 4th 44, 48 (1995) (quoting *Jefferson v. Superior Court*, 51 Cal. App. 3d 721, 724-725 (1975)). Here, the fact that Plaintiff used a vulgar word, and the fact that Joel reacted violently, is insufficient to support probable cause for disturbing the peace. *See Jefferson*, 51 Cal. App. 3d at 725. ("From constitutional precedents we deduce that it is not enough that the auditor violently react to the words in the abstract because he does not approve of profanity.") The context in which Plaintiff used the word must be considered and there must be a "showing that the words were uttered in a provocative manner." *Id.*

    In the videos Plaintiff can be seen attempting to explain to Defendants the context in which he used the word "ho." (Santiago BWC at 4:01-6:55.) However, Defendants interrupted Plaintiff numerous times and as a result, Plaintiff provided limited information regarding context. (*Id.* at 4:01-6:55.) Nonetheless, the videos are evidence that Plaintiff informed Defendants of, at least, the following information: Samantha was his friend and his girlfriend's best friend, Samantha was underage, nineteen years old at the time and was at the location with Joel, a person not "really" her boyfriend, Samantha had also been drinking and was already drunk, and because Samantha was mad at Plaintiff's girlfriend, he and his girlfriend went to see Samantha to talk to her. (*See* Santiago BWC; Butler BWC; Gomez BWC.) There is also evidence that Defendants knew Joel did not immediately react to Plaintiff's use of the word. Plaintiff informed Defendants that Plaintiff was in his car, with his seatbelt on, and had started the car, when Joel ran to the car to hit Plaintiff. (*Id.*) Plaintiff also explained to Defendants that he and Beltran "always come to talk about it, this wasn't the first time," referencing that it was not the first time he and his girlfriend went to talk to Samantha after an argument, but that this was Plaintiff's first time at this specific location. (Santiago BWC at 5:00-5:05.) Officer Gomez then accused Plaintiff of "wasting police resources," and said that

13

this "happened last week," and was "the same family" "with this drama." (*Id.* at 5:01-5:50.) It appears that Officer Gomez believed that Plaintiff had been at the location the week prior when police were also called. (*Id.*) After Officer Gomez's statements, the three officers interrupted Plaintiff continuously, accusing Plaintiff of "knowing" Joel and Joel's family, grouping Plaintiff together with "the whole family" "drama," and did not permit Plaintiff to provide any other information regarding Joel's assault on Plaintiff. (*Id.*) Shortly thereafter, Officer Santiago said to Plaintiff, "I think the best thing for you is to just get out of here." (Santiago BWC at 7:05-7:12.) It is noteworthy that there is no evidence that Defendants interviewed or relied on any other contextual information from other witnesses that night—not Joel, Beltran, Samantha, or any of Joel's family members.

In context, Plaintiff's evidence that he did not use the word in a provocative manner, but rather used the word to shame Samantha in order to prevent her from engaging in what Plaintiff and his girlfriend believed would be inappropriate conduct, is credible. Having stated this, the court fully acknowledges that the word used is inherently offensive and carries with it its own risks. At the motion for summary judgment stage, viewing the evidence in the light most favorable to Plaintiff, a reasonable juror could find that Defendants had no contextual information that Plaintiff used the word in a provocative manner. For the reasons stated above, the court denies summary judgment as to the false arrest claim.

### B. Qualified Immunity for False Arrest and Detention

The Supreme Court has established a two-prong test to determine whether qualified immunity applies. *Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009). A court must deny qualified immunity when (1) the allegations, if true, amount to a constitutional violation, and (2) the constitutional violation was clearly established at the time. *Id.* In applying the second prong, a court looks to whether "the right at issue was clearly established at the time of the incident, such that a reasonable officer would have understood her conduct to be unlawful in that situation." *Green v. City & Cty. of San*

14

*Francisco*, 751 F.3d 1039, 1051-52 (9th Cir. 2014) (citation and quotations omitted). For a claim of false arrest, the qualified immunity analysis asks, "(1) whether there was probable cause for the arrest; and (2) whether it is reasonably arguable that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1076 (9th Cir. 2011).

As discussed above, there are numerous genuine disputes of material fact. "[W]hen there are disputed factual issues that are necessary to a qualified immunity decision, these issues must first be determined by the jury before the court can rule on qualified immunity." *Morales v. Fry*, 873 F.3d 817, 824 (9th Cir. 2017) (citing commentary to Ninth Circuit Model Civil Jury Instruction 9.34 (2017)); *see also Espinosa v. City & Cty. of San Francisco*, 598 F. 3d 528, 532 (9th Cir. 2010). Defendants argue that assuming that probable cause did not exist, it is reasonably arguable that probable cause did exist because "Plaintiff's admission that he had been drinking, rocking in a back and forth motion and leaning against his car when he exited his car, smell of an alcoholic beverage emitting from his breath, and his insult of Samantha and the resulting fight, among others." (MSJ at 15:16-21.) However, a jury must determine whether these facts on which Defendants rely existed. That is, whether, Plaintiff was in fact rocking back and forth and leaning on his car, whether he smelled of alcohol, and whether Plaintiff used the word "ho" in a provocative manner. Therefore, the court declines to rule on the qualified immunity at this stage.

**C. Section 1983: Deliberate Fabrication of Evidence**

Defendants primarily argue that minor inaccuracies in the police report do not amount to deliberate fabrication and that the "BWC video shows that Plaintiff indeed had difficulty maintaining his balance while standing and walking evidenced by the BWC video showing Plaintiff when he first exited his car." (Reply at 14:9-11.) Plaintiff

15

argues that various "material facts, observations, statements, and conversations" in Officer Butler's police report are unsupported by the videos. (Opp. at 16-17.)

"The Fourteenth Amendment prohibits the deliberate fabrication of evidence by a state official." *Spencer v. Peters*, 857 F.3d 789, 793 (9th Cir. 2017) (citing *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001) (en banc)). "Deliberate fabrication can be established by circumstantial evidence," or by direct evidence such as "when an interviewer . . . deliberately mischaracterizes witness statements in her investigative report." *Id.* (quotations and citation omitted). As discussed above, the videos create triable issues of material fact. A reasonable juror could find that Plaintiff, when exiting his car and throughout his encounter with Officer Butler, did not have "difficulty maintaining his balance while standing and walking," did not have "bloodshot and watery eyes," did not "change[] his answer several times," and did not "repeatedly [tell] [Officer Butler] that he wanted to drive home." (Butler Decl., Ex. H.) The above statements in the police report are not based on Officer Butler's "inferences" as Defendants argue, rather, they are statements which can be objectively verified by a jury. Viewing the evidence in the light most favorable to Plaintiff, a reasonable juror could find that Officer Butler deliberately mischaracterized Plaintiff's statements and mischaracterized Plaintiff's behavior. Similarly, based on the videos and the officers' declarations, a reasonable juror could find that Officer Santiago and Officer Gomez were integral participants in deliberately mischaracterizing Plaintiff's statements and objective symptoms.

Further, the court declines to rule on qualified immunity at this stage. There are genuine disputes as to what Officer Butler observed, which will be determined in large part based on the videos and on Officer Butler's credibility. Therefore, the jury must decide the factual disputes necessary to determine whether qualified immunity exists. The court denies summary judgment as to the deliberate fabrication of evidence claim.
///

16

### D. Section 1983: Concealment of Exculpatory Evidence

Defendants argue that Plaintiff's claim for concealment of exculpatory evidence fails as a matter of law because Plaintiff does not have evidence that the videos were suppressed by the government or that he suffered any prejudice. (MSJ at 19:14-16.) Plaintiff argues that had Officer Butler "disclosed [the videos] in the police report," the criminal case against Plaintiff would not have been filed. (Opp. at 20:7-8.)

A claim for concealment of exculpatory evidence against a police officer requires a showing that "(1) the officer suppressed evidence that was favorable to the accused from the prosecutor and the defense, (2) the suppression harmed the accused, and (3) the officer 'acted with deliberate indifference to or reckless disregard for an accused's rights or for the truth in withholding evidence from prosecutors.'" *Mellen v. Winn*, 900 F.3d 1085, 1096 (9th Cir. 2018), cert. dismissed, 139 S. Ct. 1474 (2019) (quoting *Tennison v. City & Cty. of San Francisco*, 570 F.3d 1078, 1087, 1089 (9th Cir. 2009)).

Here, the undisputed evidence is that the police report represented to the city prosecutor that no evidence was collected—a representation that signified that no Body Worn Cameras were activated during the officers' interactions with Plaintiff. (Butler Decl., Ex. H.) It is also undisputed that this representation was false. A trier of fact may find that Defendants concealed the videos from the prosecutor and from Plaintiff. There is also sufficient evidence for a reasonable juror to conclude that Plaintiff was harmed, despite the eventual release of the videos to Plaintiff. Plaintiff was prosecuted for six months based on a police report that did not disclose the existence of the relevant evidence. The criminal complaint against Plaintiff was filed on February 27, 2017 and the prosecutor's office sent Plaintiff a link to some of the videos, not all, on July 6, 2017. Shortly thereafter, on July 18, 2017, the city prosecutor dismissed the case. (Lee Decl., Exs. L-U.) Viewing the evidence in the light most favorable to Plaintiff, a reasonable juror may conclude that Defendants improperly concealed evidence from the prosecutor

17

and from Plaintiff. The court denies summary judgment as to the concealment of evidence claim.

### E. Section 1983: Failure to Summon Prompt Medical Care

"[C]laims for violations of the right to adequate medical care 'brought by pretrial detainees against individual defendants under the Fourteenth Amendment' must be evaluated under an objective deliberate indifference standard." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). Deliberate indifference requires showing first, "a serious medical need" and second, that "the defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The second prong can be shown by a purposeful act or failure to respond to plaintiff's pain or possible medical need and harm caused by the indifference. *Id.*

Defendants put forth evidence demonstrating that medical attention was provided to Plaintiff and that Plaintiff declined the medical attention provided. (Gordoce Decl. ¶ 4; Anaya Decl. ¶¶ 4-5; Lee Decl., Ex. P; Butler Decl. ¶¶ 28-29.) Despite Defendants' evidence, there are disputed issues of material fact that must be resolved by a jury. Plaintiff's evidence shows that Plaintiff has a heart condition, Plaintiff fell to the floor crying and in pain, Defendants responded for some period of time by calling Plaintiff a "crybaby" and laughing at him, Defendants made coercive statements which, according to Plaintiff, caused him to decline medical attention, and not until some period of time had passed, a jailer, not Defendants, contacted paramedics. Taking the evidence in the light most favorable to Plaintiff, a reasonable juror could find that Plaintiff had a serious medical need, and that Defendants' coercive statements and conduct were deliberately indifferent, despite the eventual arrival of paramedics. Thus, the court denies summary judgment as to the failure to summon prompt medical care claim.

### F. Public Employee Immunity under Cal. Gov. Code § 821.6

Defendants next argue that they are immune under California Government Code § 821.96 from claims of conspiracy to violate civil rights, malicious prosecution, abuse of

18

process, and intentional infliction of emotional distress. Section 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov. Code § 821.6. Immunity under Section 821.6 extends to police officers acting within the scope of their employment. *See Lawrence v. Superior Court*, 21 Cal. App. 5th 513 (2018). However, section 821.6 is primarily to "provide relief from malicious prosecution." *Blankenhorn v. City of Orange*, 485 F.3d 463, 487-88 (9th Cir. 2007). Although intermediate state appellate courts have extended immunity to other claims arising from conduct during investigations, the Ninth Circuit has specifically declined to extend immunity to claims other than malicious prosecution. *Sharp v. Cty. of Orange*, 871 F.3d 901, 920-21 (9th Cir. 2017). Thus, in federal courts, following Ninth Circuit precedent, immunity under Section 821.6 is "limited to malicious-prosecution claims." *Id.*

The court concludes that Defendants are immune from Plaintiff's state law malicious prosecution claim. To the extent that Defendants argue for immunity for Plaintiff's claims of conspiracy to violate civil rights, abuse of process, intentional infliction of emotional distress, and battery, the court denies immunity.

The court grants summary judgment as to the malicious prosecution claim and denies summary judgment as to the claims of conspiracy to violate civil and constitutional rights, abuse of process, and intentional infliction of emotional distress.

### G. Battery

A state law battery claim "is the equivalent of a federal claim of excessive force." *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2009). "In both, a plaintiff must prove that the peace officer's use of force was unreasonable." *Id.* Here, there are no triable issue of material fact. The record does not show, nor has Plaintiff identified, any evidence of unreasonable use of force. Therefore, the court grants summary judgment as to the battery claim.

## IV. CONCLUSION

For the reasons stated above, the court grants in part and denies in part Defendant's motion for summary judgment. The court grants summary judgment on Plaintiff's malicious prosecution and battery claims and denies summary judgment on Plaintiff's remaining claims. The court further dismisses defendants City Manager Steven Mermell, Pasadena Police Department, Chief of Police Phillip A. Sanchez, Officer Dean Bisterfeldt, and Officer Matthew Griffen without prejudice.

**IT IS SO ORDERED.**

Dated: October 10, 2019

DEAN D. PREGERSON

UNITED STATES DISTRICT JUDGE